STATE of Tennessee, Appellee,

v.

Castel VENABLE, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

June 10, 1980.

Permission to Appeal Denied by Supreme Court Sept. 15, 1980.

John C. Zimmermann, Asst. Atty. Gen., Nashville, Ronald E. Miller, W. Edward Barnard, Asst. Dist. Attys. Gen., Nashville, for appellee.

James L. Weatherly, Jr., Richard McGee, Asst. Public Defenders, Nashville, for appellant.

## OPINION

DAUGHTREY, Judge.

The appellant-defendant, Castel Venable, was convicted of second degree murder and

sentenced to 20 years imprisonment. On appeal he challenges (1) the sufficiency of the evidence to support the jury's verdict, (2) the admissibility of an extrajudicial statement made by the deceased and (3) of a threat made by the defendant to an arresting officer, (4) the trial court's failure to order disclosure of certain police reports, and (5) the wording of the judgment entered against Venable, requiring him to serve this 20 year sentence at the "expiration" of a sentence on which he had been paroled at the time of this offense. We find no error in the record which would require reversal; however, the judgment will be modified as outlined below.

The evidence at trial showed that in the past the defendant had been occasionally employed by Archie Duke, owner of Duke's Texaco Station at 8th Avenue North and Monroe Street in North Nashville. On the evening of April 14, 1978, Duke died from a single shot of a 7.7 mm. Japanese rifle, which was admittedly fired by the defendant, Venable. Venable claimed that he shot in self–defense, pointing to the fact that Duke was carrying a shotgun at the time of his death.

The killing resulted from a build–up of animosity between Venable and Duke during the day of the shooting. At approximately 9:00 to 9:30 A.M. that morning, witnesses in the service station observed Duke order Venable off the property, telling him, "This is a business phone, and besides that you're drunk."

Later, in the afternoon, two witnesses saw Venable in an alley adjacent to the service station. He was armed with a long–barrelled gun. One of these witnesses quoted Venable as saying he was "out to get somebody." The other said Venable told him "to go inside and tell that big fat son of a bitch to come outside. I'm going to kill him." (There is little question that this reference was to Duke, who at 6'2" weighed some 300 pounds.) This witness drove to a nearby cafe where Archie Duke was seated with a friend, drinking a beer. Calling Duke aside, he warned him that Castel Venable was at the Texaco station with a gun,

threatening to kill Duke. Duke then placed a call to his wife, who drove to the cafe a few minutes later and delivered to Duke an unloaded .12 gauge shotgun.

Taking the shotgun with him, Duke left the cafe a little after 6:00 P.M. with his companion and drove back to the Texaco station, where he confronted Venable at the edge of the service station property. Venable was unarmed at this time. Telling Venable once again to stay off the premises, Duke hit the defendant with a blow hard enough to knock him to the ground. He then picked Venable up and threw him bodily into 8th Avenue, where the defendant lay for a few moments before getting up. Protesting that he was a "heart patient" and was unable to fight back, Venable wandered across the street and away from the station.

Duke then went into the station, accompanied by his friend, where he found two station employees. They testified that five or ten minutes later Duke wrapped his shotgun in a jacket or shirt and left the station headed for his truck, saying that he was leaving. Within a few minutes a single shot rang out. One of the men inside the service station looked out just after he heard the shot and saw Venable in a "sniper's position" with the gun pointed in his direction. He ducked back inside the station. Shortly thereafter Venable appeared at the front of the station carrying a long–barrelled gun. Witnesses across the street watched as he then walked away from the scene.

After Venable had left the premises, those inside the station ran outside looking for Duke. They found him lying face forward on top of his unloaded shotgun. The lower part of his face had been blown away by a shot that had entered the left rear of his head, just behind the jawbone. A 7.7 mm. shell casing was found 65 to 70 feet from the body.

Investigating officers learned quickly of Venable's identity and went to the nearby house where he was living at the time. They found him eating supper, unable to explain the blood-covered shirt he was

wearing. He was taken back to the Texaco station where he told a detective that he shot Duke because "he whipped me today." Venable also said that he shot in self–defense, pointing out that Duke had been armed. When Venable got to headquarters he told one of the arresting officers, "Once I get out of this, you're next."

The defendant did not testify. He now insists that the evidence is insufficient to establish the malice and lack of adequate provocation necessary to establish second degree murder.

■ The question of malice is one for the jury's determination, *Cagle v. State*, 507 S.W.2d 121, 129 (Tenn.Cr.App.1973), as is the issue of self–defense, *Arterburn v. State*, 216 Tenn. 240, 391 S.W.2d 648, 653 (1965). We conclude that the evidence summarized above, taken in a light most favorable to the State, was sufficient to permit a rational trier of fact to find the defendant guilty of second degree murder beyond a reasonable doubt. See Rule 13(e), Tennessee Rules of Appellate Procedure; *State v. Patton*, 593 S.W.2d 913, 916–17 (Tenn.1979), citing *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979). Under the proof the jury would have been justified in finding that the defendant, determined to settle his score with Duke, armed himself and laid in wait for his intended victim, shooting him at a distance in the darkness of the alley.

■ Nor do we find reversible error in the introduction of Duke's statement to Venable regarding the defendant's use of the service station telephone and the state of his sobriety. The prosecution attempted to justify the statement on the ground that it was not hearsay because it was uttered in the defendant's presence. This thoroughly bogus test of what constitutes hearsay, *see Laird v. State*, 565 S.W.2d 38, 41 (Tenn.Cr. App.1978) and *Bennett v. State*, 530 S.W.2d 788, 792–93 (Tenn.Cr.App.1975), was apparently accepted by the trial judge. Nevertheless, despite the fact that the *reason* for the introduction of the statement was erroneous, the *result* was not. Clearly the statement was probative not as proof of the matter asserted therein, but because of its effect on the hearer, in this case the defendant, supplying evidence of his motive in returning to the service station later in the day, armed and threatening to kill the declarant, Archie Duke. Thus, the statement was not hearsay, as the trial judge ruled, and there was no error in its admission. *Bennett v. State, supra*, at 793.

■ Moreover, even if the statement were construed to be hearsay, the prejudicial effect of its introduction was clearly mitigated by other evidence. The defendant contends that the statement supplied evidence of ill–will between the defendant and the victim, and proof that Venable had been drinking at an early morning hour, a fact which would tend to inflame the jury. However, the remainder of the record supplied ample proof of animosity between Venable and Duke, and at least two other witnesses testified that Venable appeared to have been drinking that morning; one testified that at approximately 9:30 A.M. the defendant offered him a drink from a bottle of what was presumably liquor of some variety. Thus, we conclude that the challenged extrajudicial statement had little or no impact on the outcome of this trial.

■ The defense also complains of the introduction of Venable's statement to the officer who arrested him, "After I get out of this, you're next," on the ground that the statement was not relevant, or, if relevant, that its prejudicial effect outweighed its probative value, citing *State v. Banks*, 564 S.W.2d 947 (Tenn.1978). We conclude that the statement was relevant to prove the defendant's malice in killing Archie Duke and in rebutting his claim of self–defense. See *Cooper v. State*, 210 Tenn. 63, 356 S.W.2d 405, 409–10 (1962). We thus find no error in its introduction.

■ The defendant next contends that the State's failure to disclose discrepancies between testimony of prosecution witnesses at trial and summaries of their pretrial statements contained in an investigative report compiled by Detective Shirley Davis

violated his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We have inspected the report in issue and we find that it contains no exculpatory evidence which, if suppressed, would have entitled the defendant to *Brady* relief. Moreover, the discrepancies between the report and the witnesses' testimony at trial were not of such a material nature as to render them subject to disclosure. *See generally United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

■ In a related argument, the defendant contends that Detective Davis' report was discoverable under Rule 16(a)(1)(E) of the Tennessee Rules of Criminal Procedure. However, the summaries contained in the report clearly were not "statements" as defined by Rule 16(a)(1)(F) because none of them had been "signed or otherwise adopted or approved" by the witnesses involved, nor were they "stenographic, mechanical, electrical, or other recording of a statement, or a transcription or summary thereof, which is an essentially verbatim recital of an oral statement" made by those witnesses. Hence the investigative report was not discoverable under Rule 16.

■ Finally, the defendant insists that the trial court erred in directing that his sentence in this case is to be served "at the expiration of" a previous sentence for which the defendant was on parole at the time the instant offense was committed. He argues that by explicitly ordering the second sentence to commence only at the "expiration" date of the former sentence, rather than ordering it to be served "consecutively," the trial court has denied him the possibility of being paroled on the first sentence. This result, he contends, defeats the operation of T.C.A. § 40–3620, which provides that a parolee who is convicted of a subsequent felony must serve the remainder of the sentence under which he was paroled *or such part of that sentence as the Parole Board may determine* before he commences serving the subsequent sentence. We note, furthermore, that Rule 32(b) of the Tennessee Rules of Criminal Procedure provides that "[a] sentence for a felony committed while on parole from a sentence for a felony, whether the sentencing court explicitly so orders or not, shall be *consecutive* to the sentence paroled upon if and when that parole is revoked (emphasis supplied)."

We conclude that any error in the wording of the judgment below was probably the result of inadvertence and not an attempt to usurp the parole board's authority to determine how much of the defendant's prior sentence should be served before commencement of the instant sentence. See *Howell v. State*, 569 S.W.2d 428 (Tenn. 1978). We therefore reform the judgment entered in the trial court to delete the words "said sentence to run at the expiration of his present sentence." As a result, the instant sentence will be served consecutively as a matter of law, in conformity with the provisions of Rule 32(b).

The judgment of the trial court is affirmed as modified.

WALKER, P. J., and SCOTT, J., concur.