IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 2, 2001

## JEREL HUGHES v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

Appeal from the Chancery Court for Davidson County
No. 00-2096-III      Ellen Hobbs Lyle, Chancellor

No. M2001-00074-COA-R3-CV - Filed September 3, 2002

Petitioner, a state inmate, filed the underlying action seeking review of actions taken by the Tennessee Department of Correction and the Tennessee Board of Probation and Parole, including the decision of the Board to deny parole and set the next parole hearing two years later. Petitioner had been convicted of an additional felony while on parole from a previous felony conviction. The trial court dismissed the petition for failure to state a claim under Tenn. R. Civ. P. 12.02(6). For the reasons set forth below, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Jerel Hughes, Clifton, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Ashley S. Old, Assistant Attorney General, for the appellees, Tennessee Department of Correction and Tennessee Board of Probation and Parole.

### OPINION

Mr. Hughes, a state prisoner, appeals from the trial court's dismissal of his action seeking judicial review by common law writ of certiorari, a declaratory judgment, issuance of a writ of habeas corpus, and other relief. His lawsuit was based upon the following set of facts, which we must presume to be true because he appeals from the grant of a motion to dismiss. *Bell v. Icard, Merrill, Cullins, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999).

Mr. Hughes was convicted and sentenced in 1993 to imprisonment for a term of fifteen (15) years. He was paroled from that sentence on September 10, 1997. One year later, while on parole

from his original sentence, he committed another offense, aggravated robbery, for which he was sentenced, on February 11, 1999, to eight (8) years imprisonment, but with all but one year (day for day) suspended, followed by placement on supervised probation.

He was served with a parole revocation warrant shortly after his arrest for the 1998 offense, and he appeared before the Board of Probation and Parole ("Board") on May 13, 1999. In his brief Mr. Hughes refers to this hearing as a revocation hearing and states it "was the result of appellant committing a subsequent offense." According to the documents attached to Mr. Hughes's petition, his parole from his original sentence was revoked and the time for him to begin serving his new sentence was set for September 15, 1999. The reason for the revocation was indicated as "NF," meaning new felony. We note that according to the same form, Mr. Hughes's sentence was calculated to expire on January 12, 2005.

Mr. Hughes alleges that on September 16, 1999, he was "forced to go back before" a Board hearing officer and that the result was a decision that he had to serve an additional two (2) years and could be reconsidered by the Board for parole after those two (2) years. Mr. Hughes refers to this hearing as a "time setting hearing," but the documents attached to Mr. Hughes's petition indicate this was a parole hearing which resulted in a recommendation that he be denied parole. The reasons for the denial, indicated by checkmarks on the form, were "There is a substantial risk that the offender will not conform to the conditions of release" and "The offender's continued correctional treatment, medical care or vocational or other training in the institution will substantially enhance the offender's capacity to lead a law-abiding life when given release status at a later time." Below these reasons are handwritten notes stating, "parole violation" and "substance abuse," which we interpret as being further explanation of each reason, respectively. This recommendation by the hearing officer was approved by the Board.

Mr. Hughes administratively appealed this ruling pursuant to Board procedure, and by letter dated April 27, 2000, he was informed that his appeal had been denied and that this determination was final. The letter stated that Mr. Hughes's appeal from the September 16, 1999 parole grant hearing had been thoroughly reviewed, that he had not supported his claim that significant new information or evidence existed which was not available at the time of the hearing, and that his allegation of substantial procedural irregularity by the hearing officer was unsubstantiated by a review of the file and the tape of the hearing.

Subsequently, Mr. Hughes filed a petition for common law writ of certiorari in Davidson County seeking review of the Board's decision to decline parole for another two years. During the course of this litigation in the trial court, Mr. Hughes amended his complaint and filed various other motions and requests for relief. He named both the Board and the Department of Correction (hereinafter referred to jointly as "the State"). The trial court issued a memorandum and order dealing with the various claims for relief and granted the State's motion to dismiss and denied all motions filed by Mr. Hughes. In granting the motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6), the court held that the petition for writ of certiorari was not filed within the sixty (60) day time limit imposed in Tennessee Code Annotated § 27-9-102 and did not allege any illegal,

fraudulent, or arbitrary action on the part of the Board. The trial court dismissed the motion for injunctive relief based on the conclusion that Mr. Hughes did not show he was entitled to the relief he requested. The trial court determined that the petition for habeas corpus relief was inappropriate because the evidence before the court did not establish that the term of imprisonment had expired or the judgment was void. The court determined that Mr. Hughes's motion for extraordinary appeal was premature and filed in the wrong court. The court denied Mr. Hughes's request to be brought before the court because he failed to state a claim under any of the legal theories he asserted. The trial court denied Mr. Hughes's motion for declaratory judgment based on lack of jurisdiction because Mr. Hughes had not previously sought a declaratory order from the Department of Correction regarding his sentence calculation.

On appeal, Mr. Hughes raises the following issues: (1) whether the trial court was correct in dismissing the petition for failure to state a claim; (2) whether the Board exceeded its jurisdiction or acted in an illegal, arbitrary, or capricious manner; (3) whether the trial court was correct in dismissing the petition as untimely; (4) whether the trial court was correct in dismissing the petition for habeas corpus relief; (5) whether the Board was correct in calculating Mr. Hughes's sentence; and (6) whether the trial court was correct in denying Mr. Hughes's motion for appointment of counsel. Based on the following, we affirm the decision of the trial court.

I.

Although the State makes technical procedural arguments herein, relating to relief under common law writ of certiorari, the writ of habeas corpus, and the Administrative Procedures Act's provisions on declaratory judgments, before we address the requirements of the appropriate procedure, we must first identify Mr. Hughes's real claim. The State has not responded directly to what we perceive to be the prisoner's actual complaint from which he seeks relief. Neither has the State filed the administrative record regarding actions taken by either the Department of Correction or the Board regarding Mr. Hughes's sentence.

Mr. Hughes filed a petition for writ of certiorari to challenge the decision of the Board denying his administrative appeal. That decision affirmed the Board's earlier decision which, in part, denied parole to Mr. Hughes. However, it is not really the denial of parole to which he objects. Instead, it is the resetting of his next parole hearing for two years later, when, according to his argument, he was not required to appear before the Board at all. He argues that at the original revocation hearing, the Board ordered that his new sentence begin September 15, 1999; that because his new sentence was for only one year, he was not required to meet with the Board before being released on supervised probation for the remainder of that sentence; and that the Board's second hearing resulted in an order requiring him to serve additional time.[1] His argument is based on the

---

[1]Mr. Hughes's position is that both the hearings resulted in decisions by the Board that his new sentence begin on September 15, 1999, and that during the time between the two hearings he had violated no rules or given the Board any reason to "bring him back up and take his parole." Had he begun his new sentence on September 15, 1999, he argues

(continued...)

3

proposition that the Board's setting a date for the beginning of his new sentence automatically caused his original sentence to end the day before, because those sentences must be served consecutively.

With regard to Mr. Hughes's original fifteen (15) year sentence, his parole did not terminate that sentence. While parole normally terminates confinement, the parolee continues in constructive custody until the expiration of the full term of his sentence. Parole is nothing more than a conditional suspension of a sentence. *Howell v. State*, 569 S.W.2d 428, 432-33 (Tenn. 1978). Upon revocation of Mr. Hughes's parole, the Board had wide discretion regarding appropriate continued incarceration.

The Board is vested with the duty and authority to decide "the action to be taken" if parole is violated, Tenn. Code Ann. § 40-28-118(c), and after a parole revocation hearing:

> may, if it sees fit, require such prisoner to serve out in prison the balance of the maximum term for which the prisoner was originally sentenced, calculated from the date of the delinquency or such part thereof, as it may determine, or impose such punishment as it deems proper, subject to the provisions of § 40-28-123.

Tenn. Code Ann. § 40-28-122(d).

In relevant part, Tenn. Code Ann. § 40-28-123(a) provides:

> Any prisoner who is convicted in this state of a felony, committed while on parole from a state prison, jail or workhouse, shall serve the remainder of the sentence under which the prisoner was paroled, or such part of that sentence, as the board may determine before the prisoner commences serving the sentence received for the felony committed while on parole.

This statute has been in existence for a long time and has included essentially the same language that now appears in that sentence of Tenn. Code Ann. § 40-28-123(a) quoted above. *See Henderson v. State*, 419 S.W.2d 176, 522 (Tenn. 1967).[2] Our courts have long interpreted this statute as precluding a trial court from imposing the sentence for a felony committed on parole to run concurrently with the original sentence from which the individual was paroled. *Henderson*, 419 S.W.2d at 522-23 (explaining that the effect of the statute is that the trial judge is powerless to order such a concurrent sentence); *Taylor v. Morgan*, 909 S.W.2d 17, 20 (Tenn. Crim. App. 1995); *State v. Buchanan*, No. M1999-00980-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 173, at *11-*12 (Tenn. Crim. App. Feb. 29, 2000) (permission to appeal denied Sept. 18, 2000); *Bergdoff v. State*, No. 01C01-9508-CC-00279, 1996 Tenn. Crim. App. LEXIS 629, at *11 (Tenn. Crim. App. Oct. 8,

---

[1](...continued)
his sentence would have expired and he would have been released before the date set for his next parole hearing.

[2]This language was previously found at Tenn. Code Ann. § 40-3620.

1996) (no Tenn. R. App. P. 11 application filed); *State v. Sharpe*, No. 01C01-9301-CR-00031, 1993 Tenn. Crim. App. LEXIS 832, at *10 (Tenn. Crim. App. Dec. 9, 1993) (no Tenn. R. App. P. 11 application filed); *McDaniel v. State*, No. 03-C-01-9202-CR-00048, 1992 Tenn. Crim. App. LEXIS 866, at *5 (Tenn. Crim. App. Nov. 13, 1992) (permission to appeal denied Mar. 1, 1993); *State v. Brown*, No. 86-203-III, 1987 Tenn. Crim. App. LEXIS 2231, at *1-*2 (Tenn. Crim. App. May 12, 1987) (permission to appeal denied Aug. 3, 1987). *See also El-Amin v. Campbell*, 973 S.W.2d 222, 223 (Tenn. Ct. App. 1998) (holding that as a matter of law, a sentence for a felony committed while on parole from a sentence for a felony shall be consecutive to the sentence paroled upon if and when that parole is revoked).

Mr. Hughes relies upon the language of Tenn. Code Ann. § 40-28-123(a), and we think his argument is fairly construed as presenting the question of whether that statute requires the Board to make the sentences consecutive or, alternatively, whether the statute's "or such part of that sentence as the Board may determine" language gives the Board the authority and discretion to direct that the new sentence begin at a date earlier than the expiration of earlier sentence.[3]  In other words, does the Board have authority to allow the prisoner to serve the sentences concurrently?  If it does not, Mr. Hughes argues, then the Board's action in setting the beginning of his new sentence necessarily implies a determination that he was not required to serve any more of his original sentence.

Our courts have determined that the Board has such discretion.  In *State v. Venable*, 606 S.W.2d 298 (Tenn. Crim. App. 1980), the Court of Criminal Appeals considered the argument of a petitioner that the trial court's judgment ordering that his sentence for a crime committed while on parole commence "at the expiration of" his original sentence defeated the operation of Tenn. Code Ann. § 40-3620 "which provides that a parolee who is convicted of a subsequent felony must serve the remainder of the sentence under which he was paroled or such part of that sentence as the Parole Board may determine before he commences serving the subsequent sentence." *Venable*, 606 S.W.2d at 302.  The Court of Criminal Appeals concluded that any error in the wording of the judgment "was probably the result of inadvertence and not an attempt to usurp the parole board's authority to determine how much of the defendant's prior sentence should be served before commencement of the instant sentence." *Id.*  *See also Walker v. State*, No. 01C01-9707-CR-00297, 1998 Tenn. Crim. App. LEXIS 979, at *6-*7 (Tenn. Crim. App. Sept. 10, 1998) (permission to appeal denied Feb. 1, 1999) (holding that only the Board has the authority to determine the portion of a paroled sentence that is to be served after revocation and the discretion to determine "concurrency").

---

[3]Our research reveals that the fact situation presented by Mr. Hughes is not unique and that the Board has apparently been following the same procedure for some time.  *See, e.g., Garrett v. Tenn. Bd. of Paroles*, No. M2000-00219-COA-R3-CV, 2002 Tenn. App. LEXIS 5, at *1-*4 (Tenn. Ct. App. Jan. 4, 2002) (no Tenn. R. App. 11 application filed) (stating in the facts that Mr. Garrett was paroled in 1987 from a life sentence; his parole was revoked after he was convicted in 1994 of a felony and sentenced to twelve (12) years for his second sentence; in August 1994 the Board determined Mr. Garrett would begin serving his twelve-year sentence on February 8, 1995); *Crass v. Tenn. Dep't of Corr.*, No. 01-A-01-9409-CH-00434, 1995 Tenn. App. LEXIS 230, at *3-*4 (Tenn. Ct. App. Apr. 12, 1995) (no Tenn. R. App. P. 11 application filed) (stating in the facts that Mr. Crass arrived at the Department of Correction in 1983 with a sentence of twenty (20) years; he was paroled in 1988; he was convicted of new crime committed while on parole and was given a sentence of thirty-six (36) years; his parole was revoked, and the Board ordered that his new conviction begin December, 1991.

5

It has been held that even though a trial court may not impose concurrent sentences in the situation of a felony committed while on parole, the court may recommend to the Board that it allow the prisoner to serve both sentences concurrently. *State v. Herron*, No. 249, 1990 Tenn. Crim. App. LEXIS 680, at *4-*5 (Tenn. Crim. App. Oct. 11, 1990) (permission to appeal denied Jan. 14, 1991). Apparently, it was common practice at one time for the Board to take into consideration the trial court's recommendation on the application of the consecutive sentence statute. *Henderson,* 220 Tenn. at 522-23, 419 S.W.2d at 177-78. Nonetheless, it is within the Board's authority and discretion to set the new sentence, for a felony committed while on parole, to begin to run before the prisoner has completely served the remainder of the original sentence which was reinstated after parole revocation.

The statute clearly gives the Board the authority to decide how much of the prior sentence must be served before the new sentence commences. Nothing in the language of the statute equates this decision to the Board's determination on how much of the reinstated remainder of the prior sentence must be served before the prisoner can be paroled again. Consequently, we do not agree with Mr. Hughes's argument that the Board's setting of a beginning date for his new sentence must be interpreted as an implicit decision that he would not be required to serve any portion of the remainder of his original sentence beyond the date set for beginning the new sentence.[4]

In at least three cases, the Court of Criminal Appeals has addressed the same argument as that made herein by Mr. Hughes and has found it to be without merit. In *Crass v. State*, No. 03C01-9304-CR-00135, 1995 Tenn. Crim. App. LEXIS 1013, at *1 (Tenn. Crim. App. Dec. 29, 1995) (permission to appeal denied May 6, 1996), in a habeas corpus petition, the appellant specifically alleged that:

> Since the Board of Paroles ordered the petitioner to begin serving time on the sentence for the felony committed while on parole on December 1, 1991, they effectively vacated the remainder of the prior sentence being served on the 1983 Grand Larceny conviction as of that date.

The Court of Criminal Appeals, following *Fletcher v. Livesay*, No. 88-197-III, 1988 Tenn. Crim. App. LEXIS 792 (Tenn. Crim. App. Dec. 28, 1988) (no Tenn. R. App. P. 11 application filed), affirmed the judgment of the trial court dismissing the habeas corpus petition. *Crass*, 1995 Tenn. Crim. App. LEXIS 1013, at *3-*5. The same result was reached in *McMath v. State*, No. 01C01-9608-CC-00360, 1998 Tenn. Crim. App. LEXIS 155, at *3-*4 (Tenn. Crim. App. Feb. 4, 1998) (no Tenn. R. App. P. 11 application filed). Mr. McMath committed a felony while on release by virtue of a commutation. His commutation was later revoked, he was sentenced to serve two (2) years on the new conviction, and the Board recommended that the new two (2) year sentence should begin

---

[4]While the Board may have the authority to so decide, we cannot assume such was the intention of the Board when the law does not require that conclusion, there is no express statement to that effect by the Board, and the documents indicate a different date for the expiration of the sentence.

on a date well before the expiration of the earlier sentence.[5]  In a habeas corpus proceeding, Mr. McMath alleged that his continued incarceration was illegal because he had fully served the sentence upon which he was being held.  He specifically alleged that under Tenn. Code Ann. § 49-28-123(a) his previously imposed life sentence was terminated by the setting of a beginning time for his new sentence.  Relying on *Fletcher v. Livesay*, the court rejected that argument and affirmed the trial court's dismissal of his habeas corpus petition.

In *Fletcher*, the petitioner used the same argument.  Mr. Fletcher was sentenced in 1971 to a term of ninety-nine (99) years, but his sentence was commuted in 1981 to time served and he was placed on parole and was to remain under supervision until 2021.  In 1986, while on parole, he was convicted of another felony.  On January 27, 1987, the Board determined that Mr. Fletcher had violated his parole and ordered service of the one year sentence on the new conviction to begin from the date it was imposed, February 7, 1986, "thereby affording Fletcher credit for the time served while waiting for the Board's decision." *Fletcher*, 1988 Tenn. Crim. App. LEXIS 792, at *3.  Mr. Fletcher claimed that because Tenn. Code Ann. § 40-28-123 requires a sentence for an offense committed while the prisoner is on parole to be served consecutively to the sentence for which the prisoner is on parole, the original ninety-nine (99) year sentence terminated upon completion of the new one-year sentence.  Stated another way, the argument was that the action of the Board setting the beginning of the new sentence had caused the expiration of the ninety-nine (99) year murder sentence.  In considering this argument, the Court of Criminal Appeals stated:

> Application of petitioner's theory of "absorption" or "merger" would cause the 99-year sentence to be "gobbled up" by the one-year sentence; put another way, it would effectively reduce the 99-year sentence to a one-year sentence. . . .  This result is preposterous and absurd; . . . .

*Id.*, 1988 Tenn. Crim. App. LEXIS 792, at *3-*4.

We conclude that Mr. Hughes remains incarcerated under his original fifteen (15) year sentence because his parole from that sentence was revoked.  The Board's determination to allow him to begin serving his new sentence while he is serving the remainder of his original sentence did not have the effect of terminating or "expiring" the original sentence.  By setting another grant of parole hearing for Mr. Hughes, it is obvious the Board is willing at that time to consider how much of this original sentence he must serve before he is re-paroled.  The fact that he will have begun serving, and perhaps have completed the incarceration part of, his new sentence can only operate to his advantage.

---

[5]The Governor agreed and signed an order that Mr. McMath's new sentence would begin to run on that date.

II.

Based upon our determination of the merits of Mr. Hughes's claim, we agree with the trial court that he has failed to state a claim upon which relief can be granted and that his complaint was properly dismissed pursuant to Tenn. R. Civ. P. 12.02(6).[6]

No prisoner has a right to be released on parole prior to the expiration of his or her sentence. *Robinson v. Traughber*, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999). Parole is a privilege, and the power to decide to release a prisoner on parole rests with the Board of Probation and Parole, not the courts. *Hopkins v. Tenn. Bd. of Paroles & Prob.*, 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001). Accordingly, because parole decisions are entirely discretionary, *Richardson v. Tenn. Dep't. of Corr.*, 33 S.W.3d 818, 820 (Tenn. Ct. App. 2000), *Daniels v. Traughber*, 984 S.W.2d 802, 803 (Tenn. Ct. App. 1998), the only vehicle for obtaining judicial review of the Board's decisions is a common law writ of certiorari. *Thandiwe v. Traughber*, 909 S.W.2d 802, 803 (Tenn. Ct. App. 1994).

The common law writ of certiorari is considered an extraordinary remedy that is not available as of right. *Utley v. Rose*, 55 S.W.3d 559, 563 (Tenn. Ct. App. 2001); *Blackmon v. Tenn. Bd. of Paroles*, 29 S.W.3d 875, 878 (Tenn. Ct. App. 2000). Under a petition for common law writ of certiorari, a court's review of administrative agency decisions is limited to a determination of whether the administrative body acted within its jurisdiction or acted arbitrarily, capriciously, or illegally. *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987). Because the Board has the authority to take the action complained of, it has not acted illegally, arbitrarily or beyond its jurisdiction in refusing parole and setting the next parole hearing. Therefore, Mr. Hughes has not stated a claim for relief under the common law writ of certiorari.

Habeas corpus relief for a person incarcerated after conviction of a crime is available only when a convicting court is without jurisdiction or authority to sentence a defendant or when the sentence has expired. *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1992). Mr. Hughes's claim is that his sentence has expired. As discussed above, however, his original fifteen (15) year sentence has not expired. Consequently, Mr. Hughes has not stated a claim for relief under the writ of habeas corpus.

To the extent that Mr. Hughes actually challenged computation of his sentence, it is correct that such a claim must be brought against the Department of Correction, because the Department is given exclusive responsibility for "calculating the sentence expiration date and the earliest release date of any felony offender. . . ." Tenn. Code Ann. § 40-28-129. Such an action must be brought pursuant to Tenn. Code Ann. § 4-5-225, and a prerequisite is that the petitioner first seek a declaratory order from the agency. Tenn. Code Ann. § 4-5-225(b). The trial court herein found that

---

[6]The Court of Appeals may affirm a judgment on different grounds from those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999).

Mr. Hughes had not sought a declaratory order from the Department concerning his sentence calculation.

We are not convinced that Mr. Hughes's complaint is with the Department's calculation of his sentence expiration or any other aspect of his sentence, except to the extent that the Department did not interpret the Board's setting of the time for his new sentence to begin as an implicit determination that his original sentence was fully served on that date. We have addressed that issue in our discussion of the merits of his principal argument.

However, this court has previously held that an involuntary dismissal because of the failure to comply with Tenn. Code Ann § 4-5-225(b) is not an adjudication on the merits which would preclude future judicial review if the administrative remedy is sought. *McMahan v. Whisman*, No. 01-A-01-9711-CH-00681, 1998 Tenn. App. LEXIS 353, at *5 (Tenn. Ct. App. May 29, 1998) (no Tenn. R. App. P. 11 application filed). Therefore, the dismissal of Mr. Hughes's action on the basis of failure to request a declaratory order from the Department is without prejudice.

The last issue presented by Mr. Hughes on appeal is whether the trial court was correct in denying his motion for appointment of counsel, filed pursuant to Rule 13, Section 1(d)(4) of the Rules of the Supreme Court of Tennessee. The trial court denied the motion and based its ruling on the holding in *Barish v. Metropolitan Gov't*, 627 S.W.2d 953, 955 (Tenn. Ct. App. 1981), where this court determined that "there is no absolute right to counsel in a civil action." *See also Memphis Bd. of Realtors v. Cohen*, 786 S.W.2d 951, 953 (Tenn. Ct. App. 1989); *Howse v. Johnson*, No. M1998-00513-C0A-R3-CV, 2000 Tenn. App. LEXIS 383, at *6 (Tenn. Ct. App. June 13, 2000) (no Tenn. R. App. P. 11 application filed). We affirm the decision of the trial court denying Mr. Hughes' motion for appointment of counsel.

III.

Based upon the foregoing, the judgment of the trial court is hereby affirmed. Costs of the appeal are assessed to appellant, Jerel Hughes, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE