IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 22, 2018

**STATE OF TENNESSEE v. MATTHEW TYRONE SISSON**

**Appeal from the Criminal Court for Hamilton County**
**No. 297817, No. 297143    Barry A. Steelman, Judge**

_____

**No. E2017-01721-CCA-R3-CD**

_____

The Defendant, Matthew Tyrone Sisson, entered a guilty plea to two counts of aggravated assault. After a sentencing hearing, the trial court sentenced the Defendant as a Range II, multiple offender to ten years and eight years for the two convictions and ordered the sentences to run consecutively, for an effective sentence of eighteen years. On appeal, the Defendant argues that the trial court erred in admitting hearsay during the hearing, giving too much weight to enhancement factors, failing to apply additional mitigating factors, and running the sentences consecutively. After a thorough review of the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL, and ROBERT W. WEDEMEYER, JJ., joined.

Chris Dixon, Chattanooga, Tennessee, for the appellant, Matthew Tyrone Sisson.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Neal Pinkston, District Attorney General; and Lance Pope (at sentencing) and Jason Demastus (at plea hearing), Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Defendant was indicted for one count of attempted first degree murder and one count of aggravated assault in case number 297817 and for one count of aggravated

assault in case number 297143. Pursuant to a plea agreement, the Defendant pleaded guilty to two counts of aggravated assault and agreed to be sentenced as a Range II, multiple offender with the sentence length and manner of service to be determined by the trial court. The attempted murder charge was dismissed as part of the plea agreement.

At the guilty plea hearing, the State proffered the factual basis for the Defendant's guilty pleas. In case number 297817, the State asserted that on September 28, 2015, Chattanooga Police Department officers responded to a report of a stabbing and found the victim with multiple life-threatening stab wounds, which required immediate surgery. Several witnesses observed the victim and the Defendant speaking with one another while standing near a gas pump when the Defendant suddenly began stabbing the victim before fleeing on foot. The victim told officers that the altercation began "with some type of interaction" with the Defendant's girlfriend, who was present when the stabbing occurred, fled on foot with the Defendant, and was observed throwing a knife behind a garbage can near her residence.

In case number 297143, the State asserted that on October 1, 2015, the Defendant was inside a Family Dollar store, where the store manager observed the Defendant using a box cutter to remove security tags from store merchandise. The manager confronted the Defendant, who "stood up and brandished the knife as he walked out of the aisle." The police were called, and video surveillance showed the Defendant "slightly swinging his arms around with [a] box cutter" in his hand.

At the subsequent sentencing hearing, a presentence report, prepared by Ms. Michelina Ralston of the probation department, was entered into evidence. Ms. Ralston testified that the Defendant had nineteen prior convictions, including multiple felonies, and that the Defendant previously had been sentenced to probation and then violated the terms of the probation. Ms. Ralston reported that the Board of Information and Parole conducted a "Strong-R assessment," which is a tool used to identify areas for improvement to assist in lowering the recidivism rate. The Defendant's assessment showed that he was at "a high risk for recidivism when compared to others with similar histories of offenses." She agreed on cross-examination that the Defendant was only eighteen years old when eight of his convictions occurred.

Ms. Joy Williams, the Family Dollar manager whom the Defendant assaulted in case number 297143, testified that she observed the Defendant "popping the security tags off of clothing." When Ms. Williams approached to ask what he was doing, the Defendant appeared "erratic." He had damaged some of the clothes and had thrown them on the floor. Ms. Williams gathered the clothing from the floor and asked the Defendant to leave. The Defendant told Ms. Williams that he could not pay for the items he had damaged. As they approached the front exit, the Defendant went "back and forth" while

holding a knife. The Defendant pulled it out of his pocket, returned it to his pocket, pulled it back out, and then waved it in the air "in a Zorro style." Ms. Williams was standing "about three feet" from the Defendant; two other customers were five to six feet behind him. Ms. Williams used her cellular telephone to call 9-1-1 while the Defendant "kept pacing back and forth" and stepping in and out of the doorway. When Ms. Williams gave a description of the Defendant to the 9-1-1 operator, the Defendant corrected her regarding his weight and height. The Defendant told Ms. Williams he would wait for the police to arrive but left as soon as Ms. Williams got off the telephone. On cross-examination, Ms. Williams testified that the Defendant was talking to himself and "bouncing around" while removing the security tags from the clothing, that he did not make any verbal threats, and that nobody was injured.

Ms. Debbie Hall testified that her brother, Mr. James Gann, was the victim in case number 297817. She stated that Mr. Gann was incarcerated at the time of the hearing. She explained that prior to the stabbing in 2015, Mr. Gann had prostate cancer, a heart condition, and a limp from where he had some broken bones that did not heal properly. Ms. Hall estimated that Mr. Gann was six feet tall and weighed around 160 to 170 pounds in 2015. She testified that she was unaware of any connection between Mr. Gann and the Defendant other than the stabbing itself.

On the night of the stabbing, Ms. Hall went to the hospital where Mr. Gann had been taken for surgery. She stated that medical personnel told her that "they didn't know if they could help [Mr. Gann]." The defense objected on the grounds of hearsay. The State argued that the statement was offered to prove Ms. Hall's state of mind after receiving the information, or alternatively, that the hearsay was reliable. The trial court overruled the objection and held that the statement was offered to prove the effect on the listener rather than the truth of the matter asserted. Ms. Hall continued to explain that the medical staff informed her that Mr. Gann had lost a lot of blood and that they did not know whether they could sew the stab wound in his neck back together. Mr. Gann underwent several hours of surgery to sew a vein back together to stop the bleeding. Mr. Gann was transferred to the intensive care unit following the surgery and remained hospitalized for a week. Ms. Hall stated that Mr. Gann's speech was affected by his injury and that he had difficulty swallowing.

A video recording was introduced into evidence that showed a bystander at the scene of the stabbing holding a rag on Mr. Gann's neck to stop the bleeding. Ms. Hall explained that the responding paramedics told her that if not for the bystander's actions that night, "[Mr. Gann] would have bled to death in the parking lot."

Mr. Jason Sisson, the Defendant's brother, testified on behalf of the defense that the Defendant had a "normal" childhood. He stated that the Defendant did not have a

- 3 -

substance abuse problem when he got into trouble at age eighteen. He considered the Defendant to be "a very hard worker," who had worked construction and masonry jobs in the past. Upon questioning from the trial court, Mr. Jason Sisson testified that the Defendant's demeanor has been different since his arrest for these offenses and that the Defendant appeared to realize that the incident "could have been a lot worse."

Mr. Stan Sisson, the Defendant's father, testified that he divorced the Defendant's mother when the Defendant was either ten or twelve years old and that he was "gone most of that time afterwards." He reconnected with the Defendant in 2003, and the Defendant worked for him as a carpenter for three or four years. Mr. Stan Sisson described the Defendant as a good employee, but he fired the Defendant for failing to come to work. After the Defendant was fired, he went through a divorce, "ran with the wrong woman," and began abusing drugs. He stated that the Defendant was prescribed Ritalin while in grade school. He also recalled the Defendant having medical issues after ingesting lead paint.

Mr. Joshua Steffon, also the Defendant's brother, testified that he considered himself to be a "caretaker" of the Defendant. He explained that the Defendant often came to him for money and companionship. He was aware of the Defendant's prior drug abuse but did not recall whether the Defendant had any prior history of mental health issues. He explained that he saw the Defendant the night of the incident at the Family Dollar and believed the Defendant was "messed up on drugs" that night because of the "way he talk[ed]." He described the Defendant overall as "a good guy when he's not drinking or doing drugs." Upon questioning by the trial court, Mr. Steffon further explained that the Defendant stabbed Mr. Gann because he had learned that his girlfriend had been sleeping with Mr. Gann in exchange for drugs.

Mr. Eric Griffey of the Mental Health Cooperative testified that the Defendant had applied for the mental health court program. Mr. Griffey stated that an assessment was performed while the Defendant was incarcerated in March 2016, which showed that the Defendant suffered from post-traumatic stress disorder and depression.

The Defendant presented an allocution in which he explained that he grew up in a single-parent household, that his mother was incarcerated for a period while he was twelve years old, that he began experimenting with drugs and alcohol while in high school, that he dropped out of school and ran away from home, and that his addiction began when he was eighteen years old. He stated that he was diagnosed with attention deficit hyperactivity disorder, bipolar disorder, and post-traumatic stress disorder but that he was never given any treatment for his disorders. He maintained that he wished to change his life, learn new trade skills, and further his education. He explained that on September 28, 2015, he "had been up for seven days on meth." A few days later, he was

"finally coming down … [he] took two Xanax bars" and "blacked out" while he was at the Family Dollar. He expressed his remorse and desire to be "a husband, father, and a son [that his] family needs."

The trial court noted that the nature and characteristics of the Defendant's behavior were "disturbing, aggressive, and vicious." The court was particularly concerned with the fact that both of the incidents occurred in public places where the general public conducts its business. The trial court applied enhancement factors (1) and (8), that the Defendant had a previous history of criminal behavior and that the Defendant had previously failed to comply with conditions of a sentence involving release into the community, to both of the Defendant's convictions. *See* T.C.A. § 40-35-114(1), (8). The court also applied enhancement factor (10), that the Defendant "had no hesitation about committing a crime when the risk to human life was high," to the conviction relating to the stabbing of Mr. Gann, noting that "[t]o stab another individual in the torso creates one of the highest risks to human life. It's where the lungs are located, it's where the heart is located, it's the center of the being, physically." *See* T.C.A. § 40-35-114(10). The trial court considered the Defendant's family support under mitigating factor (13), the catch-all factor, but gave "substantially more weight" to the applicable enhancement factors. *See* T.C.A. § 40-35-113(13). The trial court sentenced the Defendant, as a Range II, multiple offender to ten years for the stabbing of Mr. Gann in case number 297817 and to eight years for wielding a knife at the Family Dollar in case number 297143.

In determining that the Defendant's sentences would run consecutively, the trial court found that the Defendant's criminal record was extensive and that the Defendant was "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." *See* T.C.A. § 40-35-115(b)(2), (4). The court specifically noted its concern that the Defendant "brandish[ed] a knife again just a matter of days after he ha[d] stabbed and left Mr. Gann for possible death in a public parking lot at a gas station," which the court considered "indicative of his behavior." The court also voiced concerns about the Defendant's brandishing a knife "in legitimate businesses where anybody from a child to a grandmother could have been."

## ANALYSIS

On appeal, the Defendant challenges the admission of Ms. Hall's testimony regarding Mr. Gann's injuries following the stabbing. He also argues that the trial court erred in not applying certain mitigating factors, giving too much weight to the applicable enhancement factors, and giving too little weight to the mitigating factor that was applied. He finally asserts that the trial court erred in running his sentences consecutively.

- 5 -

## I. Hearsay

The Defendant asserts that the trial court erred in admitting Ms. Hall's testimony regarding Mr. Gann's resulting injuries and medical condition.  He argues that the trial court considered the improper testimony in enhancing the Defendant's sentence.  The State responds that the trial court properly held that the testimony was not hearsay, and alternatively, that any error was harmless.

Tennessee Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Hearsay evidence is generally inadmissible unless it falls under an exception.  Tenn. R. Evid. 801.  However, "reliable hearsay, including, but not limited to, certified copies of convictions or documents" may be admitted in a sentencing hearing, so long as "the opposing party is accorded a fair opportunity to rebut" such evidence and the admission of such evidence does not violate the United States or Tennessee constitutions.  T.C.A. § 40-35-209(b).

The defense objected to Ms. Hall's testimony regarding Mr. Gann's injuries on the grounds of hearsay.  The State responded that the statement was offered to show the effect this information had on Ms. Hall, or alternatively, that the hearsay was reliable.  The trial court determined that the statement was offered to prove the effect the information had on Ms. Hall rather than to prove that Mr. Gann had actually suffered the injuries described.  The trial court did not err in considering the testimony for a non-hearsay purpose.  *See State v. Venable*, 606 S.W.2d 298, 301 (Tenn. Crim. App. 1980) (noting that a victim's statement was not hearsay when offered to prove its effect on the listener).

Moreover, the Defendant acknowledged at the plea hearing that the victim sustained multiple life-threatening stab wounds which required immediate surgery.  Furthermore, the defense did not object to the admission of the presentence report, which included the information that the Defendant was stabbed in the neck, hitting a main artery; that he was stabbed multiple times in the abdomen; and that he was "rushed into surgery due to the life-threatening injuries."  *See State v. Jamie Paul Click*, No. E2015-01769-CCA-R3-CD, 2017 WL 1189750, at *19 (Tenn. Crim. App. Mar. 30, 2017) ("It is well established that reliable hearsay, such as a presentence report, is admissible during sentencing."), *perm. app. denied* (Tenn. Aug. 16, 2017); *see also* T.C.A. § 40-35-210(b)(2) (requiring the trial court to consider the presentence report before imposing a sentence).  There is nothing in the record to suggest that the trial court's conclusion that Mr. Gann was left "for possible death" was based on Ms. Hall's testimony rather than

other evidence admitted during the plea and sentencing hearings. The Defendant is not entitled to relief.

## II. Sentence Length

The Defendant argues that the trial court erred in failing to consider additional mitigating factors, in applying too much weight to the applicable enhancement factors, and in applying too little weight to the mitigating factor that was applied. The State responds that the trial court did not abuse its discretion. We agree with the State.

In his brief, the Defendant cites *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012), for the contention that this court should review a trial court's sentencing determinations de novo. However, our supreme court's decision in *Bise* clearly held that we review such decisions for abuse of discretion, with a presumption of reasonableness granted to within-range sentences that reflect a proper application of the purposes and principles of sentencing. *Id.* at 707-08. A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015). The court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. The trial court is "to be guided by – but not bound by – any applicable enhancement or mitigating factors when adjusting the length of a sentence." *Id.* at 706. The "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* A sentence imposed by the trial court that is within the appropriate range should be upheld "[s]o long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute." *Id.* The appealing party has the burden to show that the sentence was improper. *State v. Cooper*, 336 S.W.3d 522, 525 (Tenn. 2011).

In determining the sentence, the trial court must consider: (1) any evidence received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) the evidence and information offered by the parties on the applicable mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment contained in the presentence report. T.C.A. § 40-35-210(b). "The sentence imposed should be the least severe measure necessary to achieve the purposes

for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(4), (5).

The Defendant maintains that the trial court erred in failing to apply mitigating factor (11), which provides, "The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." He points to his admitted drug use combined with his mental health issues to support his argument that the facts of the Family Dollar incident were so unusual that they show he lacked the intent to violate the law. The trial court rejected this argument and determined that factor (11) would not apply to the facts established "even if he does have mental health problems." Even if the trial court had erred in rejecting the Defendant's argument, misapplication of a mitigating factor does not invalidate a sentence otherwise properly imposed under the amended sentencing act. *See Bise*, 380 S.W.3d at 706.

The Defendant further asserts that the trial court failed to consider multiple facts under the catch-all factor, mitigating factor (13). First, he argues the court failed to consider the Defendant's mental health diagnoses; however, the trial court specifically considered his mental health and rejected the Defendant's argument that such mental health issues affected his culpability under mitigating factor (8). He further asserts that the court should have considered his lack of gang affiliation, but that information was included in the presentence report, which was considered by the trial court. *See* T.C.A. § 40-35-210(b)(2). He argues that the court failed to consider the fact that the Defendant called an officer to explain his version of the facts; however, there is no mention of this fact anywhere in the record. He maintains that the court erred in not considering the Defendant's remorse and acceptance of responsibility, yet the record shows that the trial court considered the Defendant's allocution and even remarked, "I think it's sad that people like [the Defendant] fall through the cracks or don't get attention, and then as a result of that, end up in a place where their liberty is restrained." He finally argues that the trial court failed to consider the fact that nobody was injured in the Family Dollar incident and that the entire incident only lasted a few minutes, but the court specifically stated that it considered the nature and characteristics of the incidents in making its sentencing determination. *See* T.C.A. § 40-35-210(b)(4).

The Defendant also asserts in one portion of his brief that the trial court failed to consider the Defendant's family members who testified that they would support him. In another portion of his brief, he acknowledges that the trial court considered his family support under mitigating factor (13) but asserts that the court gave the factor too little weight. The record establishes that the trial court did consider the Defendant's family

support under factor (13), and we will not reweigh the application of such factor. *See Bise*, 70 S.W.3d at 699.

The Defendant finally argues that the court erred in giving too much weight to the applicable enhancement factors and too little weight to the applicable mitigating factor. As noted above, however, this court may not reweigh a trial court's application of enhancement and mitigating factors. *See id.* Accordingly, the trial court did not abuse its discretion in determining the within-range sentence lengths. *See* T.C.A. §§ 39-13-102(e)(1)(A)(ii); 40-35-112(b)(3).

### III. Consecutive Sentencing

The Defendant argues that the trial court erred in running his sentences consecutively because he had no recent history of violent criminal activity, because he had "demonstrated that he can remain a productive member of society," and because "an extended sentence is not justly deserved in relation to the seriousness of the offenses."

The decision to impose consecutive sentences rests within the sound discretion of the trial court. *State v. Hayes*, 337 S.W.3d 235, 266 (Tenn. Crim. App. 2010). The standard of review for consecutive sentencing is abuse of discretion with a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862. Consecutive sentencing is "guided by the general sentencing principles providing that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed.'" *Imfeld*, 70 S.W.3d at 708 (citing T.C.A. §§ 40-35-102(1), -103(2)).

To impose consecutive sentencing, the trial court must find by a preponderance of the evidence at least one of seven factors listed in Tennessee Code Annotated section 40-35-115(a), which includes that "[t]he defendant is an offender whose record of criminal activity is extensive" and that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(2), (4). The trial court need only find one of the criteria listed in the statute to properly impose a consecutive sentence. *State v. Alder*, 71 S.W.3d 299, 307 (Tenn. Crim. App. 2001).

The trial court determined that the Defendant had an extensive record of criminal activity. *See* T.C.A. § 40-35-115(b)(2). The Defendant's nineteen prior convictions, which include multiple felony convictions, support this conclusion. The trial court

additionally determined that the Defendant was a dangerous offender. *See* T.C.A. § 40-35-115(b)(4). When basing its consecutive sentencing determination on the "dangerous offender classification, the trial court must conclude that the evidence has established that the aggregate sentence is 'reasonably related to the severity of the offenses' and 'necessary in order to protect the public from further criminal acts.'" *Pollard*, 432 S.W.3d at 863 (quoting *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995)). Our review of the record shows that the trial court made the requisite findings and that such findings are supported by the record.

The Defendant specifically asserts that the extended sentence was not justly related to the seriousness of the offenses. The trial court, in imposing the sentence, considered that the Defendant committed two separate, unrelated, violent offenses within a short span of time. The trial court noted that the offenses took place where the general public might have been endangered. The Defendant was initially charged with attempted first degree murder but was permitted to plead guilty to a lesser offense pursuant to a plea agreement. The trial court considered the circumstances of the offenses in concluding that the sentences were justly related to the seriousness of the crimes. Furthermore, the trial court properly determined that consecutive sentencing could be imposed because of the Defendant's extensive criminal history, and alternatively, because the Defendant was a dangerous offender. We determine that the trial court did not abuse its discretion in running his sentences consecutively. *See* T.C.A. § 40-35-115(b)(2), (4).

## CONCLUSION

Based on the foregoing reasons, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 10 -