# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE

Assigned on Briefs September 9, 2014

## STATE OF TENNESSEE v. ROBERT BRIAN KING

### Appeal from the Criminal Court for Davidson County
### No. CC 4610     Monte Watkins, Judge

### No. M2013-02168-CCA-R3-CD - Filed October 9, 2014

Defendant, Robert Brian King, was convicted by a Davidson County jury of assault. As a result, he was sentenced to eleven months and twenty-nine days in incarceration, to be served on supervised probation after the service of ten days in incarceration. Defendant was also ordered to pay restitution to the victim. After the denial of a motion for new trial, Defendant appeals, challenging the sufficiency of the evidence and the trial court's decision to exclude testimony on the basis that it constituted hearsay. After our review, we determine that the evidence was sufficient to support the assault conviction where the jury weighed the credibility of the State's witnesses and accredited their testimony. Further, we determine that the trial court erred in excluding testimony as hearsay when the statements were not offered to prove the truth of the matter asserted but to prove their effect on the hearer. However, we determine the error was harmless. Accordingly, the judgment of the trial court is affirmed.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Dawn Deaner, District Public Defender; Emma Rae Tennent (on appeal), Aimee Solway and Dave Kieley (at trial), Assistant Public Defenders, Nashville, Tennessee, for the appellant, Robert Brian King.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Hugh Ammerman, Assistant District Attorney General, for the appellee, State of Tennessee.


## OPINION

*Factual Background*

On November 27, 2012, Officer Corey Adkerson of the Metropolitan Nashville ("Metro") Police Department was dispatched to Sir Pizza in Bellevue on a "fight call." When he arrived on the scene he made contact with John Michael Shaver, the victim. Officer Adkerson observed the victim had "injuries about his neck and face." According to several witnesses on the scene, the perpetrators left the area before the authorities arrived. The witnesses on the scene spoke with Officer Adkerson. Their stories "coincided."

Several days later, Detective Steven Bowers of the Metro Police Department interviewed the victim. As a result of that interview, two suspects were identified: Damion Whitehead and Defendant. A warrant was issued for Defendant's arrest for assault.

At trial, the victim testified that he and his girlfriend, Amanda Seekell, went to Sir Pizza on Tuesday, November 27, 2012, to take advantage of the buy one pizza, get one pizza free special. The two lived together, along with Amanda's younger sister, Ericha Seekell.[1]

The trio sat in a booth near the ordering counter to wait on their dinner. The victim saw Ryan Shamsaie and Travis Smith enter the restaurant. The victim was acquainted with both men and carried on a short conversation with them while waiting on the pizzas. Both Mr. Shamsaie and Mr. Smith were sitting at a table with Mr. Smith's girlfriend, Michelle Wilson, Defendant, and Mr. Whitehead. When the victim returned to his table, he noticed both Defendant and Mr. Whitehead were facing him. The victim described that the men were looking at him and that he felt uncomfortable, like something was not quite right. The victim noticed that Mr. Whitehead kept looking at him and "rubbing his hands" together.

When the victim, Ericha, and Amanda were getting ready to leave the restaurant, the victim saw Mr. Whitehead and Defendant go outside. Around that same time, Melissa Edwards entered the restaurant. Ms. Edwards worked with Amanda. When she approached their table, the three women started talking about "hair." The victim excused himself to the restroom. When he returned to the table, he received a telephone call. He stepped outside to take the call while Amanda and Ericha continued to talk to Ms. Edwards.

---

[1]In order to avoid confusion, Amanda Seekell and Ericha Seekell will be referred to by their first names throughout this opinion.

According to the victim, "[Mr. Whitehead] struck [him] in the back of the head" as he walked out the door of the restaurant. The victim tried to put his hand in his jacket but was hit again. The victim saw Defendant run out the door of the restaurant, then he blacked out. The victim "woke up to [Mr. Whitehead] kicking [him] in the face and abdomen." According to the victim, Defendant also kicked him in the face. The victim was somehow able to "jump" up to his feet during the attack, resulting in both Mr. Whitehead and Defendant retreating to Defendant's green Chevrolet Silverado. The victim asked Mr. Whitehead why he was attacked and Mr. Whitehead claimed it was, "for calling me a bitch in middle school."

Prior to that evening, Amanda did not know Defendant but was acquainted with Mr. Whitehead, having met him at a party earlier that year in Bellevue. She met Mr. Whitehead at a time when she and the victim were broken up. Mr. Whitehead wanted her telephone number. She gave him a false number. Mr. Whitehead then sent Amanda a Facebook message. She eventually gave Mr. Whitehead her real telephone number and the two talked and texted several times. According to Amanda, they did not date each other.

Amanda recalled that on the night of the incident, as the victim exited the restaurant, "before the door could even close [Defendant] and [Mr. Whitehead] went outside." She saw Mr. Whitehead's fist go up and the victim fall to the ground. Amanda ran outside during the attack. She described the scene as follows: "[Mr. Whitehead] was behind and [Defendant] was in front. And they were both beating and kicking." When she got outside, she somehow managed to push the men off of the victim briefly before Defendant came back and kicked the victim "really hard."

Ms. Edwards recalled while she and Amanda were talking, Amanda exclaimed, "Oh my God" before running out the front door of the restaurant. Ms. Edwards followed Amanda outside and saw the victim on the ground with both Mr. Whitehead and Defendant kicking him. Mr. Shamsaie, Mr. Smith, and Ms. Wilson emerged from the restaurant after the attack.

Amanda called 911. During the call she reported that there was only one assailant. At trial, she explained that she was "not sure why [she] didn't say both [men] were involved in the attack." When the call to 911 was made, Defendant and Mr. Whitehead fled in Defendant's truck. Amanda called 911 again forty minutes later because authorities had not arrived.

Prior to trial, Mr. Whitehead pled guilty to assault. Part of the agreement with the State required him to testify in a hearing that was held involving Defendant. This hearing took place prior to the trial. At trial, Mr. Whitehead insisted that he alone was

responsible for the assault on the victim.[2]  He claimed that he attacked the victim because he was "talking trash" and calling him both the "N word" and the "B word."  He acknowledged, however, that Defendant was his best friend.  Mr. Whitehead admitted that he never personally heard the victim say these things about him but that he heard them via a third person.  The State objected to this testimony on the basis of hearsay, and the trial court sustained the objection.  Mr. Whitehead also testified that he did not go to middle school with the victim and did not make the statement that he beat the victim up because of something that occurred in middle school.

Mr. Whitehead testified that he dated Amanda briefly and that Amanda told him things about the victim.  Mr. Whitehead explained that his relationship with Amanda ended after he showed some explicit photographs of Amanda to some of his friends.  Mr. Whitehead attempted to testify about conversations he had with Amanda during which she shared statements made by the victim.  The State again objected to the testimony as hearsay.  The trial court sustained the objection.

Michelle Flowers, Mr. Whitehead's aunt, also testified for the defense.  She recalled Mr. Whitehead bringing Amanda to their house "a couple of times."  She acknowledged, however, that Mr. Whitehead told her that the two were not dating.

Travis Smith testified that he was a close friend of both Mr. Whitehead and Defendant.  He denied seeing the attack outside the restaurant and denied seeing Defendant leave the restaurant with Mr. Whitehead.  When Mr. Smith exited the restaurant, he claimed the victim was yelling at both him and Defendant.  In response, Defendant "[got] in [the victim's] face" but did not make physical contact.  Ryan Shamsaie and Michelle Wilson testified similarly.  They claimed that they did not see Defendant strike the victim and insisted Defendant was inside the restaurant during the attack.

At the conclusion of the proof, the jury found Defendant guilty of assault.  As a result, the trial court sentenced Defendant to eleven months and twenty-nine days, to be served on supervised probation after the service of ten days in incarceration.  After the denial of a motion for new trial, Defendant filed a timely notice of appeal.  He presents the following issues to this Court on appeal: (1) whether the evidence was sufficient to support the assault conviction; and (2) whether the trial court erred in excluding testimony from Mr. Whitehead as hearsay.

*Analysis*
*I. Sufficiency of the Evidence*

---

[2] At first, Mr. Whitehead claimed that he did not commit the assault.  He admitted at trial that this was a lie and that he only acknowledged his involvement in the assault after entering a favorable plea agreement.

Defendant claims that the evidence is insufficient to support the assault charge because all of the witnesses testified that Mr. Whitehead attacked the victim as he walked out of the restaurant and, of eight witnesses at trial, only four claimed that Defendant participated. Additionally, Defendant points out that Amanda's testimony is contradictory to the statements she made during the 911 call as to the number of assailants on the scene. In other words, Defendant challenges the credibility of the witnesses. The State, on the other hand, contends that because the "credibility of witnesses is an issue for the trier of fact" and the jury's verdict in this case clearly accredits the testimony of the State's witnesses, the evidence is sufficient to support the conviction. We agree.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

T.C.A. § 39-13-101(a).

The jury in this case heard evidence from Mr. Whitehead, who pled guilty to the assault, and multiple witnesses as to whether Defendant participated in the attack. Although, as pointed out by the State, we note that there were certainly inconsistencies in the testimony, it appears that the entire premise of Defendant's sufficiency argument is based upon the fact that the jury did not properly assess the credibility of the witnesses. That argument is not valid. This court has noted numerous times that it is not the province of this court to reweigh or reevaluate credibility determinations made by the finder of fact. The jury heard the evidence presented by both the State and Defendant, and, based upon its verdict, chose not to believe the testimony as presented by Defendant's witnesses. That is a determination within the province of a jury. *See State v. Williams*, 657 S.W.2d 405, 410-11 (Tenn. 1983). As previously stated, it is the trier of fact who resolves all questions of witness credibility, the weight and value of the evidence, as well as all factual issues raised by the evidence. *Pruett*, 788 S.W.2d at 561. We, as a reviewing court, are precluded from reweighing those findings.

Based upon our review of the record, the evidence presented amply established Defendant's culpability in the assault. The victim, Amanda Seekell, and Melissa Edwards testified that both Defendant and Mr. Whitehead followed the victim out of the restaurant and proceeded to "jump" him and beat him. The victim suffered cuts and bruises to his head, neck, and face and required nine stitches as a result of the beating. Following the attack, the victim was taken to a hospital. Viewed in the light most favorable to the State, this evidence is sufficient to support Defendant's conviction for assault. Defendant is not entitled to relief.

## II. Exclusion of Hearsay Testimony

Next, Defendant complains that the trial court improperly excluded testimony from Mr. Whitehead about conversations he had with Amanda Seekell during their relationship. Specifically, Defendant sought admission about matters Mr. Whitehead discussed with Amanda to "prove the effect these words had on [Mr.] Whitehead" in order to establish Mr. Whitehead's motive for attacking the victim. The trial court determined that the testimony would amount to hearsay that did not fit within a recognized exception. The State submits that the trial court did not abuse its discretion in excluding the testimony. Alternatively, the State insists that any error in exclusion of the evidence was harmless.

During trial, the following exchange occurred during direct examination of Mr. Whitehead by defense counsel:

[Defense Counsel]: When you [were] dating . . . her, did her relationship, or prior relationship, with [the victim] come up?

[Whitehead]: Yes.

[Defense Counsel]: Did she ever say anything to you about, talking about it with [the victim]?

[Whitehead]: Yes.

[Defense Counsel]: And what did she tell you?

[Whitehead]: She would tell me that, you know, that, she claimed - - well, that he claimed that he had seen me out in clubs and bars and stuff.

[Counsel for the State]: Objection. I think the witness is testifying to hearsay within hearsay at this point.

[Trial Court]: Sustained.

[Defense Counsel]: Well, your Honor, this isn't for the truth of the matter asserted. It's for the impact that it had on [Mr. Whitehead], what his mind-set was going into Sir Pizza.

[Trial Court]: Sustained.

[Defense Counsel]: [Mr. Whitehead], why did you assault [the victim] at Sir Pizza?

[Whitehead]: Because he was talking trash and using - - you know, calling me the "N" word and the "B" word, you know, and he didn't even know me.

[Defense Counsel]: Did he say those things directly to you?

[Whitehead]: No.

[Defense Counsel]: What made you think he was saying those things?

[Counsel for the State]: Then I object to the hearsay and move to strike it.

[Whitehead]: Through - -

[Trial Court]: Hold it, hold it. Don't answer. I am sustaining the objection.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). In general, hearsay statements are inadmissible. Tenn. R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or otherwise by law.").

However, this court has held that statements used to prove the effect on a listener are not hearsay:

> [A]ny time the statement is used to prove the hearer or reader's mental state upon hearing the declaration, words repeated from the witness chair do not fall within the hearsay exclusion. The statement fails the test of hearsay because it is not used to prove the truth of the matter asserted in the statement.

*State v. Carlos Jones*, No. W2008-02584-CCA-R3-CD, 2010 WL 3823028, at *14-15 (Tenn. Crim. App. Sept. 30, 2010) (quoting Neil P. Cohen, et al., *Tennessee Law of Evidence*, § 8.01[7], at 8-23 (5th ed. 2005)); *see generally State v. Venable*, 606 S.W.2d 298, 301 (Tenn. Crim. App .1980) (noting that the victim's statement was not hearsay because it was offered for its effect on the hearer, the defendant, and established evidence of his motive in returning to the scene of the crime later in the day and threatening the victim).

At trial, as outlined above, the State objected to two allegedly hearsay statements made by Mr. Whitehead during his testimony. Mr. Whitehead attempted to testify that Amanda told him things that the victim told her at a different time. Then Mr. Whitehead attempted to testify that someone, presumably Amanda, told him that the victim had called him the "N" and "B" words. Defendant claims on appeal that the statements were not hearsay because they were not offered for the truth of the matter asserted but rather to establish Mr. Whitehead's motive for assaulting the victim. We agree.[3] The statements

---

[3]In examining this issue, we note that there appears to be disagreement among panels of this court and also with our supreme court regarding the appropriate standard of review of the admissibility of hearsay evidence. *See State v. Dotson*, 254 S.W.3d 378, 392 (Tenn. 2008) (in considering an issue involving hearsay, holding that "questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this Court will not interfere in the absence of abuse appearing on the face of the record"); *Pylant v. State*, 263 S.W.3d 864, 871 n.26 (Tenn. 2008) (maintaining that the standard of review for hearsay issues is abuse of discretion); *Willie Perry, Jr. v. State*, No. W2011-01818-CCA-R3-PC, 2012 WL 2849510, at *3 (Tenn. Crim. App. July 11, 2012) (stating that standard of review for admissibility of evidence is abuse of discretion); *but see State v. Gilley*, 297 S.W.3d 739, 760 (Tenn. Crim. App. 2008) (stating that whether a statement is offered to prove the truth of the matter asserted is "necessarily a question of law" and is not subject to review under abuse of discretion standard); *State v. Schiefelbein*, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007) (holding that appellate review of hearsay issues is de novo with no presumption of correctness);

made by a third party to Amanda and relayed to Mr. Whitehead served no other purpose than to show their effect on Mr. Whitehead and serve as a reason or possible justification for his attack on the victim. In other words, the statements were offered to show their effect on the hearer. The statements were not hearsay and, therefore, the trial court improperly excluded the statements.

We determine, however, that any error was harmless. *See Tenn. R. App. P.* 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). The introduction into evidence of proof of Mr. Whitehead's motive to attack the victim was not necessarily crucial to the establishment of Defendant's guilt, in light of Mr. Whitehead's testimony that he was the only person to attack the victim. Additionally, Mr. Whitehead's testimony was supported by several other defense witnesses who also claimed he was the sole attacker. In other words, the exclusion of the statements did not prevent Defendant from presenting his theory that he was not involved in the attack on the victim. Further, the State never asserted that Defendant was the sole perpetrator. In fact, several of the State's witnesses testified that Defendant participated in the attack on the victim only after Mr. Whitehead struck the victim and knocked him to the ground. Thus, we cannot determine that the error "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Accordingly, Defendant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE

---

*Willie Perry, Jr.*, 2012 WL 2849510, at *7 (Bivins, J., concurring) (applying de novo standard of review to hearsay issues). However, it is not necessary for us to compare the merits of each position because, for purposes of our determination of this issue, the evidence would be admissible under either standard of review.