IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 18, 2022 Session[1]

**STATE OF TENNESSEE v. COREY YOUNG**

**Appeal from the Criminal Court for Shelby County
No. C1802280, 18-01293   W. Mark Ward, Judge**

———————————————————

**No. W2020-01173-CCA-R3-CD**

———————————————————

A jury convicted the Defendant, Corey Young, of possession of three hundred grams or more of methamphetamine with the intent to sell in a school zone, a Class A felony; possession of three hundred grams or more of methamphetamine with the intent to deliver in a school zone, a Class A felony; two counts of possession of a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony, a Class D felony; and two counts of possession of a firearm after having been convicted of a felony drug offense, a Class C felony.  He received an effective sentence of forty-one years.  On appeal, the Defendant challenges the sufficiency of the evidence and asserts that his right to confront witnesses was violated.  After a thorough review of the record, we affirm the Defendant's convictions and remand for correction of the judgment forms.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed;
Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

William F. Walsh, IV (on appeal), and Brett Stein and Robert Golder (at trial), Memphis, Tennessee, for the appellant, Corey Young.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Stacy McEndree and Paige Munn, Assistant District Attorneys General, for the appellee, State of Tennessee.

---

[1] This case was heard at the historic courtroom at the University of Memphis Cecil B. Humphreys School of Law.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

Officers with the Memphis Police Department ("MPD") discovered almost 4,000 grams of methamphetamine and two firearms in an unclaimed bag while conducting searches pursuant to consent on an interstate bus. They later connected the bag to the Defendant, and he was charged with the offenses at issue on appeal. The Defendant asserted at trial that the State had not established beyond a reasonable doubt that he possessed the drugs or weapons.

During the State's opening statement, the prosecutor anticipated proof showing that law enforcement first connected the Defendant with the bag containing the contraband when other passengers gave a description of the bag's owner. The Defendant objected based on hearsay, and the State countered that the statement was not offered for the truth of the matter asserted. The trial court gave a limiting instruction to the jury, informing them that "if evidence is presented in the course of this trial as to what these officers were told, I'll tell you again at that time that it's not being offered for the truth of what was said, but to explain why the officers did what they did."

Detective R. Tabor, Officer Andre Nash, and Sergeant Shannon Bowen of the organized crime unit of the MPD were tasked with conducting "safety checks" of certain incoming interstate buses. Because bus policy prohibited passengers from disembarking before the luggage under the bus was removed, officers would board buses during this period of time, announce they were asking for cooperation in a "voluntary search," and ask the waiting passengers individually for permission to search their carry-on baggage. If permission was refused, officers did not conduct a search.

On January 14, 2018, Detective Tabor, Officer Nash, and Sergeant Bowen were at the bus station, wearing police uniforms and observing the arrival of a bus en route from Texas. Although it was nighttime and the bus windows were tinted, Officer Nash observed a person running from the lower level of the bus to the upper level. Detective Tabor and Sergeant Bowen boarded the bus from the front, and Officer Nash boarded from the back. The lower level of the bus had only approximately four passengers. Officer Nash saw an empty seat containing a red-and-black, Polo-brand duffel bag. Because no one was near the bag, law enforcement made an announcement asking if anyone claimed the bag. No one downstairs claimed the bag, and Officer Nash proceeded upstairs.

Upstairs, Officer Nash saw about fifteen to twenty passengers, and he asked if anyone had left a bag downstairs. Again, no one claimed the bag. At this point, law

enforcement looked inside the bag and discovered firearms and what appeared to be significant amount of methamphetamine in gallon-sized zippered bags. Officer Nash observed a .40 caliber Glock and a .45 caliber Glock, as well as extended magazines which would hold more bullets than the magazines used by Memphis police officers. Forensic analysis revealed that the substance in zippered bags was 3,953 grams of one-hundred-percent pure methamphetamine.

Officer Nash and Sergeant Bowen went upstairs, leaving Detective Tabor with the bag. Detective Tabor testified that while she was in the lower level, some passengers told her that the bag belonged to a man upstairs, and they described his clothing. The defense objected based on hearsay and lack of personal knowledge. The trial court explained to the jury that normally, the jury would not be able to consider out-of-court statements for the truth of the matter asserted. The court explained the evidence to the jurors:

> But, on the other hand, sometimes we let these out-of-court statements in, not to show the truth of what the person was saying, but to explain why, in this case, the officers took the actions that they did. Any statements that these other passengers made are hearsay and are not to be considered by you for the truth of the matter asserted, but simply to explain why the officers did what they did next. Did that make any sense to you?

> Okay. So, you're not to consider what the passenger said as proving who had the bag, but to explain why the officers did what they did next. Okay?

Detective Tabor then elaborated that the passengers told her the bag belonged to a man wearing a "red jacket with sparkles on it."

Detective Tabor acknowledged she did not obtain the contact information of the witnesses who linked the bag to the man in the red jacket with gold glitter, and she explained that they wished to remain anonymous. Her practice was to retrieve contact information from witnesses "[i]f they would like to give it" and that if witnesses did not want to give contact information, she would note that in her report. Officer Nash also testified that Detective Tabor relayed the description of the bag's owner which she had obtained from the passengers. The court again issued a limiting instruction:

> Ladies and gentlemen, once again, I remind you that what the person on the bus, or people on the bus, told Sergeant Bowen [sic] is hearsay. It's not admitted for purposes of the truth of it being said, but just to show why the officers did what they did.

- 3 -

Officer Nash then testified that he received information which Detective Tabor had obtained from anonymous passengers and that, based on the information, he went upstairs and looked for someone in a red jacket with gold glitter on it.

Officer Nash and Sergeant Bowen both testified that the Defendant was the only person on the bus with a red jacket adorned with gold glitter, and they testified he was wearing tan pants. Sergeant Bowen testified the Defendant also wore red Air Jordan shoes and a red hat. The Defendant was sitting upstairs close to the staircase by himself. The Defendant denied ownership of the Polo bag, and Officer Nash noticed that he appeared to be shaking. The red-and-black Polo bag, in addition to methamphetamine and firearms, contained a pair of men's Michael Adams boxer briefs in a size extra-large, with "Michael Adams" printed in large letters on the waistband. Photographs of the contents of the bag were introduced at trial. Officer Nash testified that the Defendant's pants were sagging and that Officer Nash was able to determine that the Defendant was wearing the same brand and type of underwear. Officer Nash volunteered that the Defendant had "gained a few pounds" since the offense, but he identified the Defendant at trial.

Officer Nash and Sergeant Bowen both testified that the Defendant told them that he boarded the bus in Little Rock. Sergeant Bowen contacted one of the bus company's safety directors and asked him to review video of passengers boarding in Little Rock to determine if anyone in a red jacket carrying a red-and-black bag boarded the bus. The safety director was unable to find anyone matching that description boarding the bus in Little Rock. Because there was insufficient proof tying the Defendant to the bag, law enforcement took the Defendant's contact information and did not detain him further. Officer Nash testified that, while they spoke to the Defendant, a car kept circling the parking lot and that the Defendant told law enforcement that that was "his ride." The occupants of the car never approached, and the car left.

The following day, Sergeant Bowen came in contact with the bus driver who had driven the bus on which the Defendant and the methamphetamine traveled. The bus driver told Sergeant Bowen that he recalled the Defendant boarding the bus in Grand Prairie, Texas. The bus company was able to provide Sergeant Bowen a short clip of the video of passengers boarding in Grand Prairie, Texas. The video was introduced into evidence, and it shows a man in a red jacket with a glittery gold design boarding the bus with the Polo bag and proceeding upstairs. The man's face is obscured by a hat, and he is wearing tan pants. Sergeant Bowen testified that the man in the video sat in the same seat in which the Defendant was sitting when they first came into contact with the Defendant, and he testified he was able to recognize the man in the video as the Defendant through his clothing. Officer Nash also confirmed that he had viewed the video and that the person boarding the bus with the red-and-black Polo bag was wearing the same clothing

that the Defendant wore on January 14, 2018. The law enforcement officers agreed that they never saw the Defendant in possession of the red-and-black Polo bag while they were on the bus.

Ms. Robin Hulley, an investigator with the district attorney's office, testified that the bus station was next to a hotel, and a middle school was on the other side of the hotel. Ms. Hulley used a device to measure the distance between the school and the bus station, and she testified that the distance was 528 feet. The school was operating at the time of the offenses.

Lieutenant Brian Nemec testified as an expert in street-level narcotics. He stated that methamphetamine was generally consumed in quantities of 0.2 or 0.3 grams per use and that some users would habitually use one or two grams per day. He testified that the street value of methamphetamine was at an all-time low, that the quantity seized in the Polo bag would be worth around $60,000 at the time of trial, and that the drugs would have been worth more at the time of the offenses. He testified that a drug user would normally carry paraphernalia for use, such as pipes or syringes, would not carry a significant amount of cash, and would only have a small amount of methamphetamine. A seller would typically have large quantities of the drug, large quantities of cash, firearms, and paraphernalia such as scales, bags, and a vacuum sealer. He opined that the drugs in the Polo bag were for resale.

The Defendant testified that the bag did not belong to him. He stated that he boarded the bus in Dallas with a Nike bag which was stored under the bus and that he had no carry-on luggage. He described his clothing as a red Bulls jacket, a pair of black pants, and red Air Jordan shoes. He said he was not wearing a hat. The Defendant noted that he switched seats from downstairs to upstairs during the multi-hour ride because when he disembarked at a stop in Arkansas, someone took his seat. He denied having been on the lower floor when the bus arrived in Memphis and denied being the person who ran up the stairs. The Defendant allowed law enforcement to search the bag he had stowed under the bus, which contained only clothing. He testified that the bag contained Hanes brand underwear in a size 2X. The Defendant testified that he weighed around 310 pounds and had weighed around 300 pounds in 2018. He denied wearing a red-and-gold jacket with glitter. The Defendant asserted that three people sitting upstairs in the bus had on red jackets. He agreed that he was not permitted to possess a handgun. The Defendant denied having told police he boarded in Little Rock and denied telling police that the car circling the parking lot was his "ride." He agreed that he had approximately $2,000 in his pocket when he spoke to police.

In rebuttal, Officer Nash affirmed that the Defendant was wearing a red-and-gold jacket, tan pants, and red Air Jordan shoes. He testified that the Defendant's luggage,

which had been stored under the bus, had the same extra-large Michael Adams underwear which was in the Polo bag with the drugs and guns and which the Defendant was also wearing. He noted that he had detained the Defendant in the back of his patrol vehicle and could clearly see the brand of the Defendant's underwear because the Defendant's pants were sagging. He testified that the Defendant had gained weight since the offenses, and he stated that at the time the drugs were seized, he had noted the Defendant's weight from his identification as 240 pounds. Officer Nash testified that the Defendant was wearing a hat on the bus and that the face of the man with the Polo bag was obscured by a hat in the video. Both Officer Nash and Sergeant Bowen testified on rebuttal that based on the Defendant's very distinctive jacket, the Defendant was the man in the video carrying the Polo bag. Both testified that no one else on the bus wore a similar jacket. Sergeant Bowen stated that the Defendant told law enforcement he boarded in Little Rock, and both Sergeant Bowen and Officer Nash testified that he identified the car in the parking lot as his ride. Officer Nash agreed there were no drugs in the bag which the Defendant had kept under the bus.

The Defendant was charged in Counts 5 and 6 with possession of a .40 caliber Glock and a .45 caliber Glock after having been convicted of a felony drug offense, the nature and date of which were specified in the indictment. The parties entered a stipulation at trial that the Defendant had a qualifying felony for the offenses charging unlawful possession of a firearm after having been convicted of a felony drug offense, a Class C felony. T.C.A. § 39-17-1307(b)(1)(B) (2018). The prosecutor noted that possession of a firearm after having been convicted of a prior violent felony would be a Class B felony and that possession of a handgun with an unspecified prior felony would constitute a Class E felony. T.C.A. § 39-17-1307(b)(2), (b)(3), (c). The parties determined that the stipulation would not specify that the prior felony was a drug felony, and the court noted it would "treat it as a C felony."

The jury convicted the Defendant of the charged offenses. Due to lack of notice from the State, the Defendant was sentenced as a Range I offender, but the trial court noted at sentencing that the Defendant would qualify to be a career offender. The court applied as enhancement a prior history of criminal convictions, failure to comply with terms of release into the community, and committing the offenses while on parole. T.C.A. § 40-35-114 (1), (8), (13). The trial court merged the drug offenses and sentenced the Defendant to serve twenty-five years. It orally sentenced the Defendant to ten years for each count of possession of a weapon during the commission of a dangerous felony and to two years for each count of possessing a firearm having been convicted of a felony, running all the sentences consecutively. At a later hearing but prior to the entry of judgment forms, the court revisited these determinations, noting that the convictions on Counts 3 and 4 were for possession and not employment of a firearm during the commission of a dangerous felony, and reducing the sentences in each of those counts to

five years. *See* T.C.A. § 39-17-1324(a), (g)(2), (i)(1)(L) (2018). The trial court imposed a sentence of three years for each conviction of possession of a firearm after having been convicted of a drug felony. The sentences of twenty-five years for the drug offense, five years for each conviction for possession of a firearm during the commission of a dangerous felony, and three years for each possession of a firearm after having been convicted of a drug felony were all run consecutively for an effective forty-one-year sentence. In the written motion for a new trial, the Defendant challenged the sufficiency of the evidence, the denial of a motion to suppress, and the admission of expert testimony regarding street-level narcotics. The trial court denied the motion for a new trial, and the Defendant appeals.

## ANALYSIS

On appeal, the Defendant asserts that the evidence is insufficient to support his conviction and that his right to confront witnesses under the United States and Tennessee Constitutions was violated when law enforcement testified regarding the passengers' descriptions of the man with the Polo bag. We conclude that the evidence is sufficient and that the Defendant is not entitled to plain error relief based on the admission of statements not offered for the truth of the matter asserted.

## I. Sufficiency of the Evidence

The Defendant asserts that the State did not prove beyond a reasonable doubt that he possessed the bag in question or, alternatively, that the bag contained contraband at the time he possessed it. We agree with the State that the evidence was sufficient to support the convictions.

This court must set aside a finding of guilt if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). The question before the appellate court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). This court will not reweigh or reevaluate the evidence, and it may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). The jury's guilty verdict, approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the prosecution. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The trier of fact is entrusted with determinations concerning witness credibility, factual findings, and the weight and value of evidence. *Smith*, 436 S.W.3d at 764. In reviewing the sufficiency of the evidence, we afford the State the strongest legitimate view of the evidence and all reasonable inferences that can be drawn from the evidence. *State v.*

*Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *Reid*, 91 S.W.3d at 277. "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

For Count 1, a Class A felony, the State had to establish that the Defendant knowingly possessed three hundred grams or more of methamphetamine with the intent to sell and that the violation occurred within one thousand feet of the real property comprising a school.[2] T.C.A. § 39-17-434(a)(4); T.C.A. § 39-17-417(a)(3), (j)(10) (2018); T.C.A. § 39-17-432(b)(1) (2018). For Count 2, a Class A felony, the State had to establish that the Defendant knowingly possessed three hundred grams or more of methamphetamine with the intent to deliver and that the violation occurred within one thousand feet of the real property comprising a school. T.C.A. § 39-17-434(a)(4); T.C.A. § 39-17-417(a)(2), (j)(10); T.C.A. § 39-17-432(b)(1). For Counts 3 and 4, Class D felonies, the State had to show that the Defendant possessed the .40 and .45 caliber firearms with the intent to go armed during the commission of or attempt to commit the drug felonies. T.C.A. § 39-17-1324(a), (i)(1)(L) (2018). For Counts 5 and 6, Class C felonies, the State had to prove that the Defendant unlawfully possessed the .40 and .45 caliber firearms after having been convicted of a felony drug offense. T.C.A. § 39-17-1307(b)(1)(B), (b)(3) (2018).

Possession may be either actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). "'A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.'" *State v. Edmondson*, 231 S.W.3d 925, 928 (Tenn. 2007) (quoting *Black's Law Dictionary* 1163 (6th ed. 1990)). "'[C]onstructive possession is the ability to reduce an object to actual possession.'" *State v. Harvell*, 415 S.W.3d 853, 860 (Tenn. Crim. App. 2010) (quoting *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)).

Identity is an essential element of every crime. *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015). The identification of the perpetrator of a crime is a question of fact for the jury. *Id.* In resolving questions of fact, such as the identity of the perpetrator, "'the jury

---

[2] The offenses were committed and sentences imposed prior to an amendment in the drug-free school zones law reducing the zone to five hundred feet and otherwise affecting sentencing. *See* 2020 Tenn. Pub. Acts, ch. 803, §§ 1 to 9 (eff. Sept. 1, 2020). This statute was recently amended to permit a defendant sentenced for conduct occurring prior to September 1, 2020, to move for resentencing. T.C.A. § 39-17-432(h) (2022).

bears the responsibility of evaluating the conflicting evidence and accrediting the testimony of the most plausible witnesses.'" *State v. Pope*, 427 S.W.3d 363, 369 (Tenn. 2013) (quoting *State v. Hornsby*, 858 S.W.2d 892, 897 (Tenn. 1993)). Circumstantial evidence may establish identity. *See Bell*, 512 S.W.3d at 198-99 (concluding circumstantial evidence that the defendant was the perpetrator was sufficient to uphold the verdict).

Seen in the light most favorable to the State, the evidence established that a man boarded the bus in Grand Prairie, Texas, carrying the red-and-black Polo bag. While the man's face was obscured by his hat, he wore tan pants and a particularly distinctive, bright red jacket with a glittery gold design on it. The Defendant was wearing tan pants, a hat, Michael Adams brand underwear, and the same very distinctive jacket as the man boarding the bus with the bag on the video. No one on the bus other than the Defendant had a jacket similar to the very distinctive jacket worn by the man who had boarded with the Polo bag. The man on the video sat in the same seat in which the Defendant was sitting when he was approached by law enforcement in Memphis. When the bus arrived in Memphis and advanced toward the uniformed officers, Officer Nash saw someone run from the lower level, away from the vicinity of the seat where the Polo bag was found, to the upper level, where the Defendant was seated. The Defendant carried almost $2,000 in cash, and the baggage he identified as his, which had been stowed under the bus, contained Michael Adams brand underwear. The Polo bag contained almost 4,000 grams of methamphetamine, two firearms with ammunition, and some Michael Adams brand underwear. The Defendant told police he boarded the bus in Little Rock, and the car which he identified as his "ride" left while he was temporarily detained. A rational trier of fact could have inferred beyond a reasonable doubt that the Defendant was the person who boarded the bus with the bag full of methamphetamine and firearms and that, prior to observing law enforcement and abandoning the bag, he was in actual possession of the bag of methamphetamine and firearms as the bus approached the Memphis bus station, which was within 1,000 feet of a middle school. *See, e.g., State v. Andrew Young Johnson*, No. E1999-00002-CCA-R3-CD, 2000 WL 420662, at *7 (Tenn. Crim. App. Apr. 18, 2000) (the evidence was sufficient for the jury to accept that the defendant was the perpetrator who fired the weapon when the co-defendants wore distinguishable jackets and the identification was based on the defendant's Michigan jacket). The Defendant stipulated that he had a prior "qualifying felony offense." We conclude that the evidence is sufficient to support the convictions.

The judgment forms for Counts 5 and 6 indicate the felony classification using a circle around Class "E" and a circle which is crossed out around Class "C." Accordingly, the judgment forms indicate that the Defendant is a Range I offender convicted of a Class E felony, but the forms reflect sentences of three years in Counts 5 and 6. A Range I sentence for a Class E felony is not less than one or more than two years. T.C.A. § 40-

35-112(a)(5).  It appears from the transcripts of the sentencing hearings that the trial court, with the State's approbation, believed the offenses were Class E felonies during the initial sentencing hearing, when it imposed two-year sentences.  At the second sentencing hearing, the court found the offenses were Class C felonies, noting that the indictment charged the Defendant with possessing a firearm "having been convicted of … a felony drug offense" and that the parties stipulated to a "qualifying felony offense."  *See* T.C.A. § 39-17-1307(b)(1)(B), (b)(3), (c) (possession of a handgun after a prior felony conviction is a Class E felony, but possession of a firearm after a felony drug conviction is a Class C felony).  It appears that the felony classification reflected on the judgment forms is incorrect and that the Defendant was convicted of a Class C felony.  We remand for correction of the forms.

## II. Confrontation

The Defendant next asserts that his right to confront witnesses against him was violated.  He requests plain error relief.  We agree with the State that the Defendant cannot establish plain error in the admission of statements which were not offered for the truth of the matter asserted.

At trial, the State introduced evidence that passengers seated on the lower level of the bus told Detective Tabor that the Polo bag belonged to a man in a red jacket with gold glitter.  The Defendant objected based on hearsay, and the trial court gave limiting instructions each time the evidence was referenced, in particular instructing the jury that it was "not to consider what the passenger said as proving who had the bag, but to explain why the officers did what they did next."

On appeal, the Defendant challenges the testimony as violating his right to confront witnesses.  *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9.  However, at trial, the Defendant's objection to these statements on a hearsay basis only, and he did not raise the issue in the motion for a new trial.  Accordingly, the issue is waived.  *See* Tenn. R. App. P. 3(e); *State v. Howard*, 504 S.W.3d 260, 277 (Tenn. 2016) ("It is well-settled that a defendant may not advocate a different or novel position on appeal."); *State v. Charles Clevenger*, No. E2013-00770-CCA-R3CD, 2014 WL 107984, at *5 (Tenn. Crim. App. Jan. 13, 2014) (challenge under the Confrontation Clause was waived when the statement was only challenged as hearsay at trial).  The Defendant requests plain error relief.  For an error to constitute plain error sufficient to merit relief, the following factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994).  Additionally, "'the

plain error must be of such a great magnitude that it probably changed the outcome of the trial.'" *State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014) (quoting *Adkisson*, 899 S.W.2d at 642). A court need not consider all the factors if it is clear that the defendant will fail to establish at least one. *State v. Jordan*, 325 S.W.3d 1, 58 (Tenn. 2010).

While the State notes the Defendant failed to specify the objectionable statements in his brief, we observe that the Defendant cited to the pages in the record where the parties disputed the admission of the anonymous passengers' descriptions and the Defendant described the objectionable testimony as "descriptive evidence of the alleged culprit in a way that happened to describe Appellant." We conclude the Defendant's brief is sufficient for us to determine that he requests relief based on the testimony that anonymous passengers described the man with the Polo bag as wearing a red jacket with gold glitter.

However, we agree with the State that the Defendant cannot establish plain error because no clear and unequivocal rule of law was breached. Testimonial statements made by witnesses who do not appear at trial may only be admitted where the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). However, "the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *State v. Franklin*, 308 S.W.3d 799, 810 (Tenn. 2010) (quoting *Crawford*, 541 U.S. at 59 n.9). "Accordingly, since *Crawford*, federal and state courts alike have found no Confrontation Clause violation where the out-of-court statement—whether testimonial or not—was admitted for some purpose other than the truth of the matter asserted." *Id.*; *see State v. Dotson*, 450 S.W.3d 1, 64 (Tenn. 2014) ("Furthermore, the *Crawford* Court explained that the Confrontation Clause is not violated when testimonial statements are admitted for purposes other than establishing the truth of the matter asserted.").

"Therefore … before we address whether the [evidence] is 'testimonial,' we must first satisfy ourselves that the statement is hearsay and thus potentially eligible for Confrontation Clause protection." *Franklin*, 308 S.W.3d at 810-11. Here, the State did not offer the statement for the truth of the matter asserted (that the Polo bag belonged to the man in the red jacket with glitter), but to show the effect on the listener (why officers approached the Defendant). While hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Tenn. R. Evid. 801(c), "[a] statement introduced for its effect on the listener is not hearsay." *State v. Eddie Harris*, No. W2017-01706-CCA-R3-CD, 2018 WL 6012620, at *9 (Tenn. Crim. App. Nov. 15, 2018) (citing *State v. Venable*, 606 S.W.2d 298, 301 (Tenn. Crim. App. 1980); Neil P. Cohen et al., *Tennessee Law of Evidence* § 8.01, at 8-23 (5th ed. 2005)).

The trial court properly limited the jury's consideration of the evidence to exclude the truth of the matter asserted each time the evidence was referenced. The trial court did not merely refer generally to "the truth of the matter asserted" but went further to clarify to the jury that it was "not to consider what the passenger said as proving who had the bag, but to explain why the officers did what they did next." Because the statement was not offered for the truth of the matter asserted, there was no confrontation violation, and the Defendant cannot show that a clear and unequivocal rule of law was breached. *See Franklin*, 308 S.W.3d at 810. The Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing, the convictions and sentences are affirmed. The case is remanded for correction of the judgment forms in Counts 5 and 6.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE